IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.   22-225 |
| | ) | |
| SETH HOLLERICH | ) | |

**BRIEF IN SUPPORT OF MOTION**
**FOR REVOCATION OF ORDER OF RELEASE**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Karen Gal-Or, Assistant United States Attorney for said District, and, pursuant to Title 18, United States Code, Section 3145(a), files the following brief in support of the Government's Motion for Revocation of Order from Pretrial Release.

## I.    Introduction and Procedural Overview

On November 10, 2021, defendant Seth Hollerich ("Hollerich" or "the defendant") was charged via criminal complaint with possessing material depicting the sexual exploitation of a minor, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2), and possessing a firearm as an unlawful drug user, in violation of Title 18, United States Code, Section 922(g)(3).   On November 16, 2021, the defendant appeared before the Honorable Magistrate Judge Maureen P. Kelly for an initial appearance, and was ordered to be detained pending a detention hearing.   (Doc. 21).   On November 23, 2021, the defendant appeared before the Honorable Magistrate Judge Patricia L. Dodge for a detention hearing.   (Doc. 21).   Although the government initially requested that the defendant be detained pending trial (Doc. 13), the

1

government, in consultation with defense counsel and the Probation Office, agreed to forgo detention with the understanding that certain proposed conditions would be imposed, including the condition that the defendant not have unsupervised access to minors.   (Doc. 26).   Notably, at the time the government agreed to the proposed conditions of release, the defendant did not reside with, or have access to, minors.

On August 31, 2022, a federal grand jury in the Western District of Pennsylvania returned a three-count Indictment charging Hollerich with two counts of Distribution of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2252(a)(2) (Counts One and Two); and one count of Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2) (Count Three).   The government filed a renewed Request for Detention.

On September 14, 2022, Magistrate Judge Dodge presided over the detention hearing of Hollerich.   *See* Transcript of Hearing of Detention, September 14, 2022, hereinafter "Tr."   (Doc. No. 68).   During the hearing, the government presented evidence that Hollerich distributed and possessed material depicting the sexual exploitation of minors.   Specifically, the government presented evidence that Hollerich possessed hundreds of images and videos depicting the sexual exploitation of minors, including minors as young as two to three years old being sexually assaulted, and he admitted to having a sexual interest in, and masturbating to, those images and videos.   Tr. at 12:17-24:8.   Hollerich further admitted to distributing images containing child sexual abuse material on Tumblr and other file sharing programs to other users using various fake email addresses.   Tr. at 12:17-24:8.   The government also presented evidence that, after

Hollerich was charged via criminal complaint, he communicated with his minor niece on his fiancée's phone, which was not being monitored by the United States Probation and Pretrial Services Office ("Pretrial Services"), and searched for and viewed images of life-like anime depicting the sexual abuse of minors, including toddlers.   Tr. at 24:9-26:3.   The government also presented evidence that Hollerich's fiancée recently had a baby and that, while on bond pending trial for charges of child sexual exploitation offenses, Hollerich intends to live with the minor in the same residence.   Tr. at 30:16-21; 32:15-33:13.   The government further presented evidence that Hollerich has a history of suicidal ideations.   Tr. at 26:4-27:5; 33:14-21.   In addition, the government presented evidence at the hearing regarding the limitations of Pretrial Services to effectively monitor Hollerich's access to the minor as well as his internet usage, given the repeated and persistent nature of Hollerich's conduct and the ubiquity of phones and devices that can connect to the internet in his residence or other locations.   Tr. at 30:22-33:13.

At the hearing, the defendant presented evidence in support of a release plan permitting defendant to reside with his fiancée, Tiffany Lovejoy, and her infant child, at their shared home in Bethel Park, Pennsylvania.   During her testimony, Ms. Lovejoy admitted the following: (1) she relies on Hollerich for financial support to cover the cost of her residence and utilities, Tr. at 38:9-12, (2) she intends to have Hollerich sleep in the same room as her infant child, *id.* at 44:3-10, (3) she allowed Hollerich to use her cell phone, including to communicate with a minor relative, while he was on pretrial supervision, *id.* at 42:25-43:11, (4) Hollerich knows the password to connect to the internet in the residence, *id.* at 43:12-16, (5) she has not monitored Hollerich's phone or internet usage since his arrest, *id.* at 43:21-24; and (6) she does not monitor Hollerich

3

around the clock, particularly when he is his "man cave, *id.* at 42:10-16.

At the conclusion of the hearing, notwithstanding the serious nature of the charges and the weight of the evidence demonstrating Hollerich distributed and possessed child sexual abuse material, has been engaging in this conduct for many years, including during his period of supervision, that he retains a sexual interest in very young minors, and that he now has access to one such minor in his own residence, Magistrate Judge Dodge ruled that Hollerich should be released on bond.   Tr. at 69:14-75:21.   Magistrate Judge Dodge's release order allows for Hollerich's release to his residence, with Ms. Lovejoy serving as third-party custodian, with home detention, GPS monitoring, and a prohibition on use of computers and the internet.   *See* Doc. Nos. 65 & 67.

For the reasons set forth below, it is respectfully submitted that Magistrate Judge Dodge's ruling on detention is incorrect and should be reversed.   The nature of the offenses charged, the weight of the evidence supporting the charges, the defendant's demonstrated willingness to violate his conditions, Ms. Lovejoy's demonstrated failure to monitor and report violations, and the ubiquity of devices with access to the internet all demonstrate that the defendant poses a danger to the community that cannot be mitigated by any release conditions.   This is not only a presumption case; here, Hollerich has demonstrated a sexual interest in very young children, one of whom now lives with him in his home.   Even assuming defendant's evidence can rebut the presumption, the government has demonstrated by clear and convincing evidence that the Hollerich is a danger to the community.   The government submits that this danger to the community, as explained below, cannot be mitigated with any reasonable assurance; therefore, defendant should be detained

4

pending trial.

## II.     <u>Factual Background</u>

At the detention hearing, the government called two witnesses -- Special Agent with the Homeland Security Investigations ("HSI") Martin Ryan and Pretrial Services Officer Leah Masciantonio.   Special Agent Ryan testified that the government's investigation in this case began when HSI Pittsburgh received multiple referrals from the agency's Cyber Crime Center as well as the National Center for Missing and Exploited Children ("NCMEC") regarding an individual using the email addresses JimHender94@yahoo.com and JosieWales1869@yahoo.com distributing child sexual abuse material over Tumblr and other file sharing networks.   Tr. at 12:17-16:8; 22:2-10.   Among other images, the Tumblr user associated with those email addresses shared the images charged at Counts One and Two of the Indictment, the first depicting a minor female, approximately 12 years old, performing oral sex on an adult male, Tr. at 15:21-16:1, and the second depicting a nude minor female, approximately eight to ten years old, positioned on her knees, facing away from the camera, Tr. at 22:2-10.   Agent Ryan testified that the government obtained information regarding the Internet Protocol ("IP") addresses associated with those posts and learned that they resolved to a residence located at 5022 Cardox Road, South Park, Pennsylvania. Tr. at 16:2-24.   Agent Ryan testified that the government obtained a search warrant for that residence, which was executed on or about November 10, 2021.   Tr. at 16:21-17:2.

Agent Ryan testified that Hollerich was interviewed during the execution of the search warrant, and that he admitted to possessing, receiving and distributing child pornography, which he defined as "children under 18 engaged in sexual acts."   Tr. at 17:2-18:11.   Hollerich also

admitted that he controlled the email addresses JimHender94@yahoo.com and JosieWales1869@yahoo.com, and utilized those addresses to create profiles on several file sharing sites, including Wickr, Tumblr and Mega.  *Id.*  Hollerich further admitted that his Tumblr accounts were disabled because he had used them to share child sexual abuse material.  *Id.*  Hollerich also admitted that he possessed child sexual abuse material on his cell phone, which he alone controlled, and that he had been viewing and accessing child exploitation material for approximately seven years, on and off.  Tr. at 18:12-19:13.  Hollerich told agents that he searched for these images and videos using the terms "young," "cuties" and "teen," and that he masturbated and ejaculated to child sexual abuse material.  *Id.*  More specifically, Hollerich admitted to masturbating to child sexual abuse material depicting the sexual exploitation of infants and toddlers.  *Id.*

Agent Ryan testified that the government recovered a cell phone in Hollerich's bedroom, the same device listed in the forfeiture provisions of the Indictment.  Tr. at 19:17-19.  Agent Ryan testified that agents forensically examined that cell phone and found a total of 391 images and 27 videos containing child sexual abuse material.  Tr. at 19:23-20:5.  Among other images and videos, agents found a photograph depicting a nude minor female, approximately two to three years old, positioned on her knees performing oral sex on an adult male.  Tr. at 20:8-11.  Another video found on Hollerich's phone depicts a nude minor female, approximately six to seven years old, being vaginally penetrated by an adult male.  Tr. at 20:21-21:1.  Agent Ryan further testified that agents saw on Hollerich's phone the two images that are the subject of Counts One and Two of the Indictment.  Tr. at 21:8-22:13.  In addition, Agent Ryan testified that the government

obtained a search warrant for the "Josie69" Tumblr account controlled by Hollerich.   Tr. at 22:14-23:2.   Agent Ryan testified that the contents of that account contained at least four conversations between Hollerich and other Tumblr users, in which Hollerich shared child sexual abuse material. Tr. at 23:2-24:8.   In those communications, Hollerich invited other uses to "chat or trade, HMU" (which stands for "hit me up"), and stated that he loved "little cuties and jail bait," and that he "love[d] to watch [his] cock squeezing in them."   *Id.*

Agent Ryan testified that, after Hollerich was charged via complaint and placed on pretrial supervision, he violated the conditions of his supervision several times.   Tr. at 24:9-26:3.   First, Agent Ryan testified that, in or around January 2022, Hollerich communicated with a minor family member using the telephone and Facebook account of his fiancée, Tiffany Lovejoy, in violation of the conditions prohibiting him from communicating with minors and from using devices not being monitored by Pretrial Services.   Tr. at 24:23-25:4.   Agent Ryan also testified that, while on pretrial release, in the summer of 2022, Hollerich searched for and viewed life-like computer-generated images depicting child sexual abuse, including images depicting what appeared to be a one or two year old female toddler sitting on the erect penis of an adult male.   Tr. at 25:5-26:3.

Agent Ryan further testified that, during the execution of the search warrant at Hollerich's residence in November 2021, Hollerich made statements and took actions that suggested he had suicidal ideations.   Tr. at 26:7-27:4.   Among other things, after the search was completed, Hollerich went to his bedroom, closed the door and moved a firearm placed and secured in the corner of the room to his bed.   *Id.*   He also made statements to agents indicating that he had suicidal ideations in the past.   *Id.*

As noted, Officer Masciantonio, who has been assigned to supervise Hollerich since he was released on bond in November 2021, also testified at the hearing.   Officer Masciantonio testified that, since that time, Hollerich has lived with his fiancée, Tiffany Lovejoy.   Tr. at 30:13-18.   Officer Masciantonio also testified that, per the Court's original order of release, Hollerich's phone was monitored, and that, in June 2022, another Probation Officer contacted the government regarding some images found on Hollerich's phone.   Tr. at 30:22-31:7.   Officer Masciantonio testified that she never reviewed those images but was in the room when they were reviewed. Tr. at 31:5-7.   Officer Masciantonio testified that Hollerich lived with his fiancée, Ms. Lovejoy, when Pretrial Services raised concerns about the use of his monitored phone.   Tr. at 33:9-13.

Officer Masciantonio further testified about the limitations on Pretrial Service's ability to monitor Hollerich's conduct while on supervision, explaining:

- During supervision, Pretrial Services is not able to maintain constant surveillance of the defendant inside his home, Tr. at 31:8-12;

- Pretrial Services only visits the homes of defendants charged with sex offenses once a month, Tr. at 31:13-16;

- The only way to determine if a defendant is secretly using another individual's device or if the defendant purchased a new device not disclosed to Pretrial Services is if the Pretrial Services Officer sees that device in plain view during a monthly visit, Tr. at 31:17-32:1;

- Pretrial Services cannot monitor the defendant's whereabouts in real time and thus there would be no way of knowing if he purchased another device or accessed the internet on a public network, Tr. at 32:8-14;

- Pretrial Services would not be able to ensure that Hollerich did not have unsupervised access to a baby living in his residence, including Ms. Lovejoy's new baby, noting "if we're not there all the time, we certainly wouldn't know if there was unsupervised contact."   Tr. at 32:15-33:8.

Corroborating Agent Ryan's statements regarding Hollerich's suicidal ideations, Officer

Masciantonio testified that Hollerich was in mental health therapy, during which he reported "reoccurring suicidal ideations" that required "intervention" and "crisis support." Tr. at 33:14-21.

The defendant called a single witness to testify at the detention hearing – his fiancée, Tiffany Lovejoy, who had recently given birth to her child. Ms. Lovejoy testified that she and Hollerich live together in their shared residence in Bethel Park. Tr. at 37:22-38:8. Ms. Lovejoy stated that Hollerich "helps with different chores around the house" and "actually pays for half of the house and half of the utilities." Tr. at 38:9-12. Ms. Lovejoy stated that she was aware of the charges against Hollerich but it did not "change how she feels" about Hollerich and she had "no concerns about []Hollerich being around [her] child." Tr. at 38:13-39:5. In fact, Ms. Lovejoy testified that she planned to sleep with her baby in the same room as Hollerich. Tr. at 44:3-10.

Ms. Lovejoy also testified that, in their three-bedroom home, Hollerich spends time away from her in the game room, or "man cave." Tr. at 32:3-16. Ms. Lovejoy further testified that she has at least three devices in the residences, and that she keeps two laptops in her office as well as a cell phone on her person. Tr. at 42:17-24. Ms. Lovejoy testified that she gave her cell phone, which was not being monitored by Pretrial Services, to Hollerich in December 2021 when she received a facebook message from his minor niece, so that he could communicate with the minor. Tr. at 42:25-43:5. Ms. Lovejoy also testified that she might have allowed him to use her unmonitored cell phone on other occasions to communicate with his mother, despite his having his own cell phone. Tr. at 43:6-11. Ms. Lovejoy further testified that Hollerich knows the Wifi password in the residence, and thus presumably could connect to the internet from a device in the

9

residence.   Tr. at 43:12-16.   Ms. Lovejoy admitted that she has not monitored Hollerich's cell phone or internet usage since he was placed on pretrial release, and did not see the images Hollerich viewed on his cell phone depicting computer-generated images of child sexual exploitation in the summer of 2022.   Tr. at 43:25-44:2; 45:13-23.

### III.    Legal Analysis

A. Authority of the District Court

Jurisdiction over the review of a release order issued by a magistrate judge lies with the district court because the district court has original jurisdiction over the charged offenses, pursuant to 18 U.S.C. § 3145(a)(1) (providing "[i]f a person is ordered released by a magistrate judge. . . . (a) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order . . . .").

This Court reviews a magistrate judge's order of detention or release *de novo*.  *United States v. Delker*, 757 F.2d 1390, 1393-95 (3d Cir. 1985).   Accordingly, in its discretion, the District Court may proceed to rehear the evidence to support detention by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument.   *See United States v. Farris*, 2008 WL 1944131, at *7 (W.D. Pa. 2008) (Cercone, J.).

B. Presumption of Detention

Under the Bail Reform Act of 1984, pretrial detention of a defendant without bail is permitted where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."   18 U.S.C. § 3142(e); *see also United States v. Giampa*, 755 F. Supp. 665, 668 (W.D. Pa. 1990).   The

government must establish risk of flight by a preponderance of the evidence, *see United States v. Himler,* 797 F.2d 156, 161 (3d Cir. 1986), and danger to the community by clear and convincing evidence.    18 U.S.C. § 3142(f).

For defendants charged with certain offenses enumerated in 18 U.S.C. § 3142(e)(3)(E), the Bail Reform Act sets a presumption in favor of detention.    Included among the enumerated offenses are crimes against children, including the distribution of material depicting the sexual exploitation of a minor.    *See* 18 U.S.C. § 3142(e)(3)(E) (including § 2252).

Given this presumption, a defendant has the burden of producing some credible evidence to rebut the presumption.    *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).    Although this burden is not a heavy one, because the presumption "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial," in order to rebut the presumption, "a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'"    *United States v. Stone*, 608 F. 3d 939, 945-946 (6th Cir. 2010) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)).

C.    Factors to be Considered

Even if the Court were to find that the defendant has rebutted the statutory presumption of detention, the presumption favoring detention does not disappear entirely—"it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Chagra, Jr.*, 850 F. Supp. 354, 358 (W.D. Pa. 1994) (Diamond, J.) (internal citation omitted); *see also United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986).    The factors to be considered in determining whether to release a

11

defendant pending trial include: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g); *see also Perry*, 788 F.2d at 106.

## IV.    <u>Argument</u>

Considering the presumption in favor of detention combined with the other factors set out in the Bail Reform Act, 18 U.S.C. § 3142(g), there are no conditions or combination of conditions that would reasonably assure the safety of the community and the defendant's appearance as required.

### A.    <u>The Defendant is Presumed a Danger to the Community as a Matter of Law and Defendant has not Overcome the Presumption</u>

Hollerich is a danger to the community and the proposed release conditions fail to rebut the presumption in this case.    Here, the presumption in favor of detention exists under 18 U.S.C. § 3142(e)(3)(E) because cases involving conduct like Hollerich's—distributing child sexual exploitation material—pose an especially grave risk to the safety of the community.    Child pornography is an especially heinous crime because it takes advantage of a particularly vulnerable segment of society, children.    *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007).    Indeed, Congress deems such offenses crimes of violence and has imposed a mandatory minimum of five years' incarceration for distribution of child pornography.

As the bases for his release, the defendant offered his employment history, lack of criminal

history, participation in mental health sessions while on pretrial release, as well as his fiancée, Tiffany Lovejoy, as third-party custodian willing to have Hollerich return to their home under any conditions imposed by the Court.    *See generally* Tr. at 61:18-67:16.    None of the facts that the defendant presented at the detention hearing constitute "special features" of his case that take it outside of the "congressional paradigm" presuming detention.    That the defendant has a place to live and work is not a "special feature" that differentiates him from any other defendant charged with child sexual exploitation offenses.    If this is all a defendant must show to overcome the presumption of detention, the presumption of detention would be rendered meaningless.

Because Hollerich did not meet his burden to rebut the presumption of detention, the government respectfully requests that the Court grant its Motion for Revocation of Order of Pretrial Release.

B.  The Bail Reform Act Factors Remain in Favor of Detention

The Bail Reform Act requires the judicial officer to assess various factors, as described below, before releasing or detaining a defendant.    18 U.S.C. § 3142(g).    Even where the defendant presents evidence to satisfy his burden of production, the presumption of detention remains a relevant factor to be weighed along with the other § 3142(g) factors.    Here, the factors enumerated in § 3142(g) favor pretrial detention.

1.  The Nature and Circumstances of the Offenses

First, the nature and circumstances of the offense in this case weigh strongly in favor of detention.    As noted above, the evidence presented at the hearing demonstrates that the defendant distributed multiple images of child sexual abuse material and possessed hundreds of such images

13

and videos, including images and videos depicting the sexual abuse of infants and toddlers.    The

defendant also admitted to masturbating and ejaculating to child sexual abuse material, including

material depicting the sexual exploitation of infants and toddlers.    Any attempt by Hollerich to

overcome the presumption minimizes his serious offense conduct.    As noted, Congress deems the

offenses with which Hollerich has been charged crimes of violence and has imposed a mandatory

minimum of five years' incarceration for distribution of child pornography, as charged at Counts

One and Two of the Indictment.

      2.  <u>The Weight of the Evidence Against the Person</u>

As detailed at the detention hearing, the evidence against Hollerich is overwhelming.    As

Agent Ryan testified, the defendant's cell phone contained hundreds of images and videos of child

sexual abuse material, including several images that were distributed over Tumblr and other file

sharing sites.    Further, the defendant was interviewed by law enforcement and admitted to

distributing and possessing child sexual abuse material.   This testimony, in conjunction with the

fact that a federal grand jury returned an Indictment charging the defendant with distribution and

possession of child sexual abuse material, clearly establishes probable cause of defendant's

criminal conduct.

      3.  <u>The History and Characteristics of the Person</u>

Defendant's history and characteristics also support his detention.    Although the

government agreed to withdraw its request for detention when the defendant first was charged with

possession of child sexual abuse material via criminal complaint, the circumstances have now

changed.    First, a grand jury has now returned an Indictment against the defendant, charging him

with distributing child sexual abuse material, an offense that carries a five-year mandatory minimum sentence of incarceration.    Further, the defendant has demonstrated that, even while on pretrial supervision, he remains a danger to the community.    Specifically, the government presented testimony at the detention hearing that, while on pretrial release, the defendant sought and viewed images that appeared to depict the sexual abuse of minors.

The defendant argued at the hearing that possessing computer-generated images depicting the sexual abuse of minors does not violate his conditions.    However, federal law specifically prohibits possession of such obscenity, which is not protected by the First Amendment.    *See* 18 U.S.C. § 1462(a) (making it a crime to knowingly use an interactive computer service for the carriage in interstate or foreign commerce obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character); 18 U.S.C. § 1466(A)(b) (making it a crime to knowingly possess a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting that depicts a minor engaging in sexually explicit conduct and is obscene).    Further, even if it were not a crime to view such images, the defendant's actions on pretrial supervision show two things – first, that he maintains a sexual interest in minors, including very young minors, and second, that he is willing to violate the terms of his pretrial supervision to satisfy that sexual interest.    This alone demonstrates that he is and remains a danger to the community.

Defendant also argued that his release conditions, including a condition that prohibits him from accessing the internet, will remove any risk that he poses to the community.    However, the defendant here has already demonstrated a willingness to violate the terms of his supervision.    If

he is willing to use his fiancée's phone to communicate with minors, and his own phone to access obscene images, there is reason to believe he will violate his other conditions to satisfy his sexual urges.   In this day and age, electronic home monitoring and even a condition prohibiting the defendant from possessing devices with internet connectivity does not adequately address the defendant's ability to access phones and computers.   As Officer Masciantonio testified, any monitoring would not apply to devices owned by others in the household or those not disclosed by the defendant or Ms. Lovejoy to Pretrial Services.   Indeed, under the current conditions of his release, the defendant is living in the same residence and with the same person with whom he was living when he violated his pretrial supervision by viewing obscene material.   Ms. Lovejoy was not able to monitor his conduct then and could not, with certainty, be able to monitor his behavior 24 hours a day, seven days a week pending trial in this matter.   Even more concerning, the defendant poses a significant risk to Ms. Lovejoy's child, with whom he is currently living.   The evidence presented at the hearing shows that the defendant has a demonstrated interest in, and admitted to, having a sexual interest in very young minors, including infants and toddlers.   His fiancée will not be able to monitor his conduct at all times, including while she sleeps, showers, and goes to the grocery store, to ensure the baby's safety.   To the contrary, Ms. Lovejoy testified that Hollerich is even sleeping in the same room as the minor.

Further, the defendant's mental condition further supports detention in this case.   18 U.S.C. § 3142(g)(3) (explaining that the Court must "when determining detention or release, the court is directed to consider the . . . the person's . . . mental condition").   The government introduced evidence at the hearing that the defendant has a history of suicidal ideations.   Courts

have considered such evidence as weighing in favor of detention pending trial. *See, e.g., United States v. Albertson*, No. 4:06CR177, 2006 WL 8426738, at *2 (M.D. Pa. Aug. 8, 2006) (holding that the weight of the evidence against the defendant indicated that there were no conditions of release that could assure the safety of the community, including the defendant's attempted suicide in the past and the fact that he was hospitalized); *United States v. Valle-Irizarry*, No. CRIM.A. 14-00103 JLL, 2014 WL 3673103, at *3 (D.N.J. July 22, 2014) (taking into account the fact that the defendant had a history of mental health disorders and suicide attempts in finding that detention was warranted).

Finally, while the government acknowledges that the defendant has no criminal history, that fact does not mean that he has not engaged in prior criminal conduct. To the contrary, Hollerich admitted to possessing child sexual abuse material, on and off, for about seven years. Further, the defendant's willingness to violate while on pretrial release demonstrates that he continues to pose a danger to the community. As such, the fact that Hollerich lacks a criminal record should be given little, to no, weight.

4.  <u>The Danger the Defendant Poses to the Community and Whether Hollerich's Third-Party Custodian and Pretrial Services Will Be Able to Monitor His Conduct</u>

The primary reason to detain Hollerich is a risk-based analysis, and, in the government's view, the current conditions of Hollerich's release do not adequately address the risk of danger to the community. Most concerning to the government is Hollerich's access to the minor child living in his home. Officer Masciantonio admitted at the detention hearing that Pretrial Services could not assure, with certainty, that Hollerich will not have unsupervised access to the minor. The government also finds it implausible that Ms. Lovejoy will be able to ensure that the defendant has

17

no unsupervised access to the baby, particularly given that he resides with the child and sleeps in the same room as the child every night.

Further, even with a prohibition on electronics that access the internet, Pretrial Services cannot ensure that Hollerich would not be able to use his fiancée's or another's devices or obtain a contraband phone through which he could access the internet with impunity. The record shows that Hollerich lacks the ability to control the impulses that drive his criminal conduct. If Hollerich obtains a contraband device and accesses the internet, Pretrial Services would not be alerted of Hollerich's breach of his release conditions. *See United States v. Minnici*, 128 Fed. App'x 827 (2d Cir. 2005) (finding defendant's "alleged activities are of an addictive sexual nature that cannot be suppressed simply by a restrictive set of bail conditions" because "defendant's alleged activities could be undertaken within the confines of his home or in other locations where the defendant may gain access to the Internet . . .").

Finally, the government strongly believes that the record evidence shows that Ms. Lovejoy is not an appropriate third-party custodian to ensure that Hollerich will abide by the conditions of his release. Ms. Lovejoy has an admitted self-interest in not disclosing violations to Pretrial Services, as she would risk losing the financial support Hollerich provides to help her cover the costs of her housing and utilities. Further, Ms. Lovejoy has demonstrated that she either cannot – or will not – ensure Hollerich's compliance with his conditions as she admitted that she never monitored his cell phone use and she knowingly provided her cell phone to Hollerich to communicate with a minor, in violation of his pretrial conditions. For these reasons, relying primarily on Ms. Lovejoy to report any violations of Hollerich's release is, in the government's

view, grossly inadequate to protect the safety of the community.

### V.    Conclusion

Based upon the foregoing, the government respectfully requests that this Honorable Court revoke the Order of pretrial release and detain the defendant pending trial because the defendant has not provided sufficient evidence to rebut the presumption of detention as required under 18 U.S.C. § 3142(e)(3)(A), and, even if he did, no conditions or combination of conditions will reasonably assure the safety of the community and the appearance of the defendant as required.

.

Respectfully submitted,
CINDY K. CHUNG
United States Attorney


By:    *s/Karen Gal-Or*
KAREN GAL-OR
Assistant U.S. Attorney
PA ID No. 317258